WILKINSON, Circuit Judge,
dissenting from the denial of rehearing en banc:
With great respect, I would grant rehearing en banc on the issue of whether the U.S. Army Corps of Engineers abused its discretion when it approved the permits in this case under section 404 of the Clean Water Act. When one peels away some of the technical language and “internal guidance documents,” it seems to me the Corps has been fudging on an essential element of its own regulations. Indeed, the government’s protestation that it will only now work to develop a stream function assessment protocol comes mighty close to an admission that it has not been acting properly in its permitting processes. And the potentially irreversible effects that the permitted operations will have on the Appalachian ecosystem make en banc review appropriate in this case.
While I would reserve judgment on the ultimate question pending full briefing and argument, I do think the dissenting panel opinion makes a strong case that the Corps acted arbitrarily when it failed to *133 comply with the plain language of its regulations and conducted an inadequate assessment of the environmental impact of permitting mining operations to fill 23 valleys and over 13 miles of headwater streams in the mountains of West Virginia. See Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.Sd 177, 217 (4th Cir.2009) (Michael, J., dissenting). In particular, the Corps’ regulations require it to determine the effect that a proposed operation ■will have on the “structure and function of the aquatic ecosystem and organisms.” 40 C.F.R. § 230.11(e). But the Corps’ current practice appears to read the word “function” right out of the regulation. As. Judge Michael makes clear, the Corps’ failure to identify and measure the impact of mining operations on stream function poses a real danger to the vitality of the waterways and ecology of the affected areas.
The government’s own representations suggest that the Corps’ current protocols fail to address stream function. Specifically, the government represents that “the method of analysis the Corps used in this case will soon be replaced by a full functional assessment tool — which OVEC claims the Corps should have used in this case.” Federal Appellants’ Resp. to Pet. for Panel Reh’g & Reh’g En Banc at 9. The government tells us that this new functional assessment tool will “consider physical, chemical and biological functions” as well as “contributions from the entire upstream watershed.” Id. at 1. The government further assures us that “the Corps and EPA are also reviewing how these kinds of section 404 permits will be analyzed in the future,” and that “nothing in the [panel] opinion will constrain the Corps and EPA” from implementing “additional environmental safeguards.” Federal Appellants’ Resp. at 1-2.
The government argues that these new protocols obviate the need for en banc review in this case. That argument puts the cart before the horse. Rather than suggest that en banc review is unnecessary, the government’s pledge to account for stream function in the future candidly admits that the Corps shortchanged stream function in the past and thereby skirted the requirements of its regulations in issuing the permits before us, an action which itself will have a profound impact upon Appalachian waterways. See Ohio Valley Envtl. Coal., 556 F.3d at 219, 226 (Michael, J., dissenting).*
I do welcome and appreciate the government’s views in this case, and I have no doubt the government will make good on its representations to this court. I recognize also that en banc consideration should be reserved for only the most important cases. But the requirements of the Clean Water Act are important. It is often easier in the short run to diminish natural resources, but then environmental degradation is so often the product of shortsightedness. Our circuit is experiencing this first-hand. West Virginia is witnessing in the Appalachian headwaters the long, sad decline that Virginia and Maryland have seen with the Chesapeake Bay. Once the ecologies of streams and rivers and bays and oceans turn, they cannot be easily reclaimed. More often than not, the waterway is simply gone for good.
I thank my colleagues on the panel for their thoughtful consideration of this issue, and I respectfully dissent from the denial of rehearing en banc. I am pleased that Judge MOTZ joins me in this dissent.

 This is not a matter of penalizing the government by admitting evidence that it has adopted remedial measures, see Fed.R.Evid. 407, so much as a question of whether the government’s representations to this Court— which, in effect, recognize that the Corps has not been living up to its legal duties — render our review more or less important.